## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| EUGENE SCALIA,<br>SECRETARY OF LABOR,<br>U.S. DEPARTMENT OF LABOR, | ) ) ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION |
| v. | ) ) | Case No.  20-2624 |
| DANIEL L. WHITNEY;<br>MICHELLE WILLSON;<br>MEDOVA HEALTHCARE FINANCIAL<br>GROUP, LLC; MIDLANDS CASUALTY<br>INSURANCE COMPANY, INC.;<br>JUST DIABETIC SUPPLIES, LLC;<br>ADVENT HEALTH SERVICES, LLC<br>d/b/a DIRECTHEALTH; BENISON<br>CAPITAL ADVISORS, INC.; PATRICK<br>ENTERPRISES, INC.; LIFESTYLE HEALTH<br>PLANS GROUP BENEFIT PROGRAM;<br>LIFESTYLE HEALTH PLANS – LEVEL<br>FUNDED GROUP BENEFITS; LEVEL<br>FUNDED LIFESTYLE SELF-INSURED<br>HEALTH PLAN; and LIFESTYLE HEALTH<br>PLANS, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT

**EUGENE SCALIA,** Secretary of the United States Department of Labor ("Secretary"),

alleges as follows:

## INTRODUCTION

1.      The Secretary is charged with enforcing the provisions of Title I of the

Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C.

§ 1001, *et seq.*, which establishes, among other things, standards of conduct, responsibility,

and obligations for fiduciaries of employee benefit plans.

2.      Pursuant to that responsibility and authority, the Secretary initiated an investigation into Medova Healthcare Financial Group, LLC ("Medova"), a third-party administrator of employer-sponsored healthcare plans having discretionary authority over approximately 2,600 separate self-funded ERISA-covered plans located across thirty-eight states that cover approximately 35,000 participants,[1] as of November 6, 2020.

3.      During that investigation, the Secretary discovered and alleges herein that Defendant Medova and its principals, Defendant Whitney and Defendant Willson (collectively, the "Medova Defendants"), contrary to their ERISA-based obligations as fiduciaries charged with a duty of prudence and undivided loyalty to the participants and beneficiaries of the plans they administered, commingled, misappropriated, mismanaged, and diverted for their own use funds entrusted to them strictly for the payment of the uninsured portions of medical claims and reasonable expenses. The Medova Defendants commingled funds, diverted funds to corporate accounts and other companies they controlled, and used funds belonging to one plan to pay the claims of another.

4.      Ultimately, because of the Medova Defendants' misuse of funds, the Medova MEWA faces a severe funding deficiency in excess of $18 million and millions of dollars of unpaid claims they are obligated to pay. The critical funding deficiency leaves thousands of participants and beneficiaries, who made contributions believing they would have health coverage, without the health benefits they were promised. The Medova Defendants continue to engage in flagrant violations of ERISA that cause significant harm to the plans and

---

[1]Approximately 156 plans administered by Medova are not covered by ERISA pursuant to ERISA section 4(b)(1) (government plans), ERISA section 4(b)(2) (church plans), and 29 C.F.R. § 2510.3-3(b) (plans covering no employees). 29 U.S.C. § 1003(b)(1) and (b)(2) and 29 C.F.R. § 2510.3-3(b).

participants, which will likely result in even greater widespread public harm absent prompt judicial actions.

5.     ERISA is specifically designed to protect against the harms the Medova Defendants have caused. ERISA is designed to ensure "the soundness and stability of plans with respect to adequate funds to pay promised benefits[.]" ERISA § 2(a), 29 U.S.C. § 1001(a). To protect plan assets, ERISA requires that such assets be held in trust by one or more trustees and that those who manage the assets of the plan act solely, exclusively, and prudently in the interests of plan participants. ERISA §§ 403(a) and (c), 404(a)(1)(A) and (B), 29 U.S.C. §§ 1103(a), 1104(a)(1)(A) and (B).

6.     ERISA prohibits fiduciaries from using plan assets for their own benefit, ERISA section 406(b), 29 U.S.C. § 1106(b), or in transactions with or for the benefit of "parties in interest," as defined in ERISA section 3(14), 29 U.S.C. § 1002(14), per ERISA section 406(a), 29 U.S.C. § 1106(a), unless those transactions meet the strict requirements of statutory, class, or individual exemptions. ERISA § 408, 29 U.S.C. § 1108.

7.     When ERISA's strict fiduciary standards are not met, the Secretary has the authority to seek relief under ERISA sections 409 and 502(a)(2) and (5), 29 U.S.C. §§ 1109 and 1132(a)(2) and (5), to restore plan losses, to recover unjust profits, and to obtain other remedial and equitable relief. The Secretary may also seek to enjoin a breaching fiduciary from acting as a fiduciary or service provider to employee benefit plans in the future.

## BACKGROUND

8.     The Medova Defendants operate a multiple employer welfare arrangement ("MEWA") to provide health and welfare benefits primarily for employer-sponsored ERISA-covered benefit plans. As set forth more fully below, the Medova Defendants are fiduciaries with

control over the plan assets and management of over 2,600 ERISA-covered employee benefit plans participating in the MEWA ("Participating Plans").

9.      Premiums received from the Participating Plans are often transferred and pooled together in corporate accounts held by Medova and its subsidiary, Midlands Casualty Insurance Company, Inc. ("MCIC"), as part of the MEWA for purposes of paying participant and beneficiary claims. Until this year, premiums of small employers were also pooled together in an account titled the NexCentra Employer Services Inc. Reimbursement Account ("NexCentra Pooled Account"). Pooled assets from Participating Plans are routinely used to pay the claims of other Participating Plans, including in instances when those claims should be covered by stop-loss insurance.

10.      In addition, the Medova Defendants selected entities they own to provide stop-loss insurance and other services to the Participating Plans without disclosing these affiliated relationships to Participating Plans. Assets of the Participating Plans are routinely diverted to these entities to the Medova Defendants' personal benefit.

11.      The Medova Defendants allocated an excessive amount of premium dollars for stop-loss coverage to Medova's subsidiary, MCIC. The excessive amount of premium dollars allocated for stop-loss coverage by MCIC, together with the transfers described in Paragraphs 9 and 10, leave Participating Plans with insufficient funds to cover claims of their participants and beneficiaries.

12.      Even though the Medova Defendants owe a duty of prudence and loyalty to all of the Participating Plans' participants and beneficiaries, they continue to breach their fiduciary duties and engage in prohibited transactions without properly administering the Participating Plans, causing a critical funding deficiency of over $18 million as of December 31, 2019, and

unpaid claims totaling over $21 million as of May 22, 2020. As of December 31, 2019, there was only approximately $7 million available in employer claim fund accounts to pay claims. Based on the backlog of unpaid claims and the continued misuse of plan assets, the MEWA will not be able to pay all outstanding and future claims and is headed for collapse.

13.     The Secretary now brings this suit for relief. The Secretary seeks to enjoin the Medova Defendants from serving as fiduciaries and service providers of the Participating Plans, and seeks the immediate appointment of an independent fiduciary to take control of the MEWA, the Participating Plans, and their assets. In addition, the suit also seeks a final judgment to undo the prohibited transactions and to recover any residual losses to the Participating Plans, to permanently bar the Medova Defendants and MCIC from acting as an ERISA fiduciary or service provider in the future, and for other remedial and equitable relief.

## JURISDICTION AND VENUE

14.     This action arises under ERISA and is brought by the Secretary to obtain relief under ERISA sections 409 and 502(a)(2) and (5), 29 U.S.C. §§ 1109 and 1132(a)(2) and (5), to redress violations and enforce the provisions of Title I of ERISA.

15.     This Court has subject matter jurisdiction over this action pursuant to ERISA section 502(e)(1), 29 U.S.C. § 1132(e)(1). The subject of the Secretary's Complaint is a non-ERISA covered MEWA encompassing employer-sponsored ERISA-covered employee benefit plans (*i.e.*, the Participating Plans) to provide medical and other health and welfare benefits to employees and eligible employee dependents.

16.     Venue is appropriate in this district under ERISA section 502(e)(2), 29 U.S.C. § 1132(e)(2), and 28 U.S.C. § 1391(d), which provide for jurisdiction in any district where a defendant resides or may be found. Defendant Medova is headquartered in Wichita, Kansas, and

resides within this Court's jurisdiction. Defendants Whitney and Willson also reside in this district. In addition, several of the alleged breaches took place within this judicial district.

## PARTIES

17.     The Secretary is vested with the authority to enforce the provisions of Title I of ERISA by, among other means, the filing and prosecution of civil claims against fiduciaries and other parties who violate ERISA. ERISA § 502(a)(2) and (5), 29 U.S.C. § 1132(a)(2) and (5).

18.     Defendants Lifestyle Health Plans Group Benefit Program, Lifestyle Health Plans – Level Funded Group Benefits, Level Funded Lifestyle Self-Insured Health Plan, and Lifestyle Health Plans (collectively, the "Medova MEWA") comprise a multiple employer welfare arrangement ("MEWA") within the meaning of ERISA section 3(40)(A), 29 U.S.C. § 1002(40)(A), which provides benefits and holds assets for over 2,600 ERISA-covered employee benefit plans. For the remainder of this Complaint, the MEWA is referred to as the "Medova MEWA," while the ERISA-covered plans participating in the MEWA are referred to as the "Participating Plans." Each Participating Plan was established or maintained by an employer for the purpose of providing medical and other health and welfare benefits pursuant to ERISA section 3(2), 29 U.S.C. § 1002(2), and is thus an employee benefit plan pursuant to ERISA section 3(3), 29 U.S.C. § 1002(3). As an arrangement with authority and control over ERISA-covered plan assets, the Medova MEWA is subject to the provisions of Title I of ERISA. Because each Participating Plan is covered by ERISA pursuant to ERISA section 4(a), 29 U.S.C. § 1003(a), the Participating Plans' assets controlled by the Medova MEWA are also subject to coverage of ERISA pursuant to ERISA section 4(a), 29 U.S.C. § 1003(a). The Lifestyle Health Plans Group Benefit Program, Lifestyle Health Plans – Level Funded Group Benefits, Level Funded Lifestyle Self-Insured Health Plan, and Lifestyle Health Plans are named as defendants

herein pursuant to Rule 19(a) of the Federal Rules of Civil Procedure to assure that complete relief can be granted.

19.     Defendant Medova Healthcare Financial Groups, LLC, is a Kansas limited liability company, formed on or about November 12, 2002. Defendants Whitney and Willson own a 62.6% and 10% ownership interest in Medova, respectively. Defendant Medova exercises discretionary authority and/or discretionary control respecting management of the Participating Plans covered by the Medova MEWA and/or exercises authority or control respecting management or disposition of its assets, and has discretionary authority or discretionary responsibility in the administration of the Participating Plans covered by the Medova MEWA and, thus, is a fiduciary of the Participating Plans pursuant to ERISA section 3(21)(A)(i) and (iii), 29 U.S.C. § 1002(21)(A)(i) and (iii), and a party in interest pursuant to ERISA section 3(14)(A), (B) and (G), 29 U.S.C. § 1002(14)(A), (B) and (G).

20.     Defendant Daniel L. Whitney is a resident of Kansas. Defendant Whitney is the President and CEO of Medova and owns a majority of it. Defendant Whitney exercises discretionary authority and/or discretionary control respecting management of the Participating Plans covered by the Medova MEWA and/or exercises authority or control respecting management or disposition of its assets, and thus, is a fiduciary of the Participating Plans pursuant to ERISA section 3(21)(A)(i), 29 U.S.C. § 1002(14)(A)(i), and a party in interest pursuant to ERISA section 3(14)(A), (B) and (H), 29 U.S.C. § 1002(14)(A), (B) and (H).

21.     Defendant Michelle Willson is a resident of Kansas. Defendant Willson is the COO & Executive Director of Physician Services at Medova and owns 10% of it. Defendant Willson exercises discretionary authority and/or discretionary control respecting management of the Participating Plans covered by the Medova MEWA and/or exercises authority or control

respecting management or disposition of its assets, and thus, is a fiduciary of the Participating

Plans pursuant to ERISA section 3(21)(A)(i), 29 U.S.C. § 1002(14)(A)(i), and thus, is a fiduciary

of the Participating Plans, and a party in interest pursuant to ERISA section 3(14)(A), (B) and

(H), 29 U.S.C. § 1002(14)(A), (B) and (H).

     22.     Defendant Midlands Casualty Insurance Company, Inc. was incorporated in

Hawaii on or about February 12, 2015, as a wholly-owned subsidiary of Medova. Defendant

Medova currently owns 67% of MCIC, and Defendant Willson has a 10% direct ownership

interest in MCIC. Defendant MCIC is a captive insurer, providing stop-loss insurance services to

the Participating Plans covered by the Medova MEWA. Defendant MCIC exercises discretionary

authority and/or discretionary control respecting management of the Participating Plans covered

by the Medova MEWA and/or exercises authority or control respecting management or

disposition of its assets, and thus, is a fiduciary of the Participating Plans pursuant to ERISA

section 3(21)(A)(i), 29 U.S.C. § 1002(14)(A)(i), and a party in interest pursuant to ERISA

section 3(14)(A)(B) and (G), 29 U.S.C. § 1002(14)(A), (B) and (G).

     23.     Defendant Advent Health Services, LLC, doing business as DirectHealth

("Advent"), was incorporated in Kansas on or about March 24, 2003, and provides services to

the Participating Plans covered by the Medova MEWA. Defendants Whitney and Willson each

indirectly own a 50% interest in Advent through their respective ownership interests in Benison

Capital Advisors, Inc., owned 100% by Whitney, and Patrick Enterprises, Inc., owned 100% by

Willson. Benison Capital Advisors, Inc. and Patrick Enterprises, Inc. each own a 50% interest in

Advent. Thus, Advent is a party in interest pursuant to ERISA section 3(14)(B) and (G), 29

U.S.C. § 1002(14)(B) and (G).

8

24.     Defendant Just Diabetic Supplies, LLC ("JDS") was incorporated on or about December 8, 2012, in Kansas and purportedly provides services to the Participating Plans covered by the Medova MEWA.  Defendant Whitney has a direct 50% ownership interest in JDS. Thus, JDS is a party in interest pursuant to ERISA section 3(14)(B) and (G), 29 U.S.C. § 1002(14)(B) and (G).

25.     Defendant Benison Capital Advisors, Inc. ("Benison Capital") was incorporated in Kansas on or about April 26, 2016.  Defendant Whitney is a director and sole owner of Benison Capital. Thus, Benison Capital is a party in interest pursuant to ERISA section 3(14)(G), 29 U.S.C. § 1002(14)(G).

26.     Defendant Patrick Enterprises, Inc. ("Patrick Enterprises") was incorporated in Kansas on or about June 22, 2017. Defendant Willson is a director and sole owner of Patrick Enterprises. Thus, Patrick Enterprises is a party in interest pursuant to ERISA section 3(14)(G), 29 U.S.C. § 1002(14)(G).

## GENERAL ALLEGATIONS

### 1.  The Medova MEWA is a Multiple Employer Welfare Arrangement

27.     The Medova MEWA operates as a non-plan, ERISA-covered MEWA, in that it is not itself an employee welfare benefit plan, but consists of multiple underlying participating employer self-insured employee welfare benefit plans. Participating employers are headquartered in approximately thirty-eight states across the United States and come from a wide range of industries. There is no evidence of common control among the participating employers, nor any cohesive bond. Participating employers are heterogeneous and unrelated, with the only common purpose being a shared desire for employee medical coverage.

28.     Although the Medova MEWA is not itself an ERISA-covered plan, employers sponsor Participating Plans that comprise the Medova MEWA. With the exception of a small number of governmental plans, church plans, or plans covering no employees, each of the Participating Plans is covered by ERISA pursuant to ERISA section 4(a), 29 U.S.C. § 1003(a) and is subject to Title 1 of ERISA, which imposes fiduciary responsibilities on the Medova Defendants.

29.     The Participating Plans obtain medical and other health and welfare benefits, including prescription drug, dental, and vision benefits for their employees through their participation in the Medova MEWA. The Medova MEWA offers different coverage and deductible options for the sponsors of the Participating Plans to select. The Medova Defendants select all providers for the Medova MEWA.

30.      The Participating Plans are "level-funded" health benefit plans, which blend elements of fully-insured and self-funded plans. Sponsoring employers of the Participating Plans obtain two forms of stop-loss insurance policies: specific coverage and aggregate coverage. Specific coverage insures claims for a covered individual once that individual's claim accruals exceed a specific value outlined in the stop-loss agreement, known as the "attachment point." Aggregate coverage insures coverage of all claims once the employer's claims total has reached an aggregate attachment point specified in the stop-loss agreement. The employer is responsible for funding all claims that do not meet either the specific or aggregate attachment points.

31.     The Participating Plans were created with the intent to provide benefits, and they have an identifiable class of beneficiaries, a source of financing, and procedures for obtaining the benefits. When sponsoring employers transfer employee and employer contributions to the

Medova MEWA on behalf of the Participating Plans, it is the employers' intent that these contributions are to be used to pay claims and necessary and reasonable administrative expenses.

### 2. Marketing and Enrollment in the Medova MEWA

32.     Marketing materials for the Medova MEWA provide that employees will not have to pay more than their monthly premium and "any risk to the sponsoring employer has been removed beyond the 12 months of premium paid." Marketing materials also provide "[y]our maximum annual claims, including claims run-off liability, are predetermined and you pay 1/12 of this cost each month for the 12 months of your plan year. After you have paid this amount, there are no other charges for the claims fund" and "[n]o matter how much your claims are in any plan year, you will also never pay more than the monthly cost quoted to you."

33.     The Medova MEWA requires employer clients to sign an Administrative Service Agreement ("ASA"), a Remittance Agreement, and a Health Care Account Agreement (previously referred to as a "Plan Trust Document"), each adapted from prototype documents developed by Medova.

34.      The Medova Defendants or their brokers provided Participating Plans with an Employee Benefits Booklet and "Attachment #1," which were intended by Medova to serve as the summary plan description and "wrap" document to outline employee eligibility, describe benefits, explain how the plan is financed, and detail the process for obtaining benefits.

### 3. Contributions to the Medova MEWA

35.     Employer contributions and employee contributions fund the Participating Plans. At the time of initial enrollment, and upon annual renewal, sponsoring employers of Participating Plans are provided with a rate proposal reflecting the amount of contributions payable for each of administrative costs, claims funding, and stop-loss insurance.

36.     The ASAs require employers to remit to Medova monthly premium amounts as invoiced by Medova. The monthly invoices to participating employers request one-lump sum amount to be remitted based on the number of enrolled participants for that month, the level of coverage they elected, and the monthly premium Medova established for that level of coverage.

37.     Defendant Medova does not include a reserves component in its premiums for the Medova MEWA.

38.     A fixed amount of monthly premiums remitted by sponsoring employers to Medova is deposited in individual bank accounts established by the Medova Defendants in Medova's name and located at Simmons Bank in Pine Bluff, Arkansas ("Claim Fund Accounts") to pay for claims covered by the Participating Plan of the sponsoring employer. In many cases, the name on a Claim Fund Account includes "FBO" the sponsoring employer. Defendants Whitney and Willson have sole signatory authority over the Claim Fund Accounts.

39.     However, until sometime in 2019, monthly premiums paid by sponsoring employers with twenty-five or fewer employees were remitted to the NexCentra Pooled Account. The NexCentra Pooled Account was created and operated solely by Defendant Medova, with Defendants Whitney and Willson as the only signatories with authority over the account.

40.     Another portion of the monthly premiums remitted to Medova went toward aggregate stop-loss insurance provided by carriers, including MCIC, Medova's captive insurer. Of the portion of funds earmarked for aggregate stop-loss premiums, 15-20% went to a MCIC bank account in Hawaii; the other 80-85% went to an account in the name of MCIC and located at Simmons Bank in Pine Bluff, Arkansas, called the Midlands Casualty Insurance Company, Inc. Accommodation Fund ("MCIC Accommodation Fund"). Defendants Whitney and Willson have sole signatory authority over the MCIC Accommodation Fund. The intended purpose of the

MCIC Accommodation Fund is to provide advance aggregate stop-loss funding during the year according to pro rata attachment points. Until sometime in 2019, MCIC aggregate stop-loss contracts did not provide for an aggregate accommodation feature.

### 4.  Unpaid Claims

41.     Medova is responsible for claims adjudication, including appeals, pursuant to the Participating Plan's governing documents. The Medova Defendants have the authority to approve or reject the payment of any claim made by a participant or beneficiary. The Medova Defendants alone decide which claims are paid and when.

42.     Medova's severe funding deficiency has resulted in the Medova Defendants not paying claims on behalf of Participating Plans, improperly denying claims, and untimely paying claims.

43.     As of May 22, 2020, there are approximately $21,113,576 in unpaid claims.

44.     Defendant Medova is named as a defendant in at least three lawsuits relating to the Medova MEWA: (1) *Singh v. Medova*, No. 3:19-CV-05465 (W.D. Wash. filed March 24, 2019); (2) *Rininger v. Medova*, No. 3:20-cv-00603-JD-MGG (N.D. Ind. filed July 17, 2020); and (3) *SM Medical Holdings Corp. v. Medova and Christian Brothers*, No. 3:20-CV-10801 (D.N.J. filed Oct. 12, 2020) seeking the payment of outstanding claims.

45.     The Medova Defendants are aware of the Medova MEWA's severe underfunding, but have not reported the financial condition of the Medova MEWA to sponsoring employers or the Participating Plans. Further, the Medova Defendants have failed to file any Forms M-1 with the Secretary reporting its financial condition.

46.     The Medova Defendants and Defendant MCIC are currently the subject of several audits and investigations by state regulatory agencies.  On July 18, 2019, a Cease and Desist

Order and Notice was filed before the Director of the Department of Insurance, State of Idaho, with respect to Defendants Medova, MCIC, and Whitney. The Cease and Desist Order was issued because the Idaho Department of Insurance found that Defendant Medova had marketed, directly or through local brokers, Lifestyle Health Plans to Idaho employers, and that a number of Idaho employers had entered into agreements with Defendant Medova, despite Medova's application for a third-party administrator license being denied, in violation of their state insurance code.  Further, the Idaho Department of Insurance found that Defendant MCIC was not licensed or registered with the department "in any capacity."

<u>COUNT ONE</u>

**The Medova Defendants Are Failing to Keep Plan Assets in Trust**

47.      Paragraphs 1 through 46, above, are incorporated by reference.

48.      Until sometime in 2019, Defendant Medova and employers sponsoring Participating Plans entered into ASAs in which Medova promised to establish a "Trust account" at a financial institution selected by Medova to receive all funding from the employer, with Medova retaining draft authority on the trust account to make payment of claims for benefits and plan expenses. All employers enrolled in the Medova MEWA also executed a Remittance Agreement with Medova stating that Medova established a trust account for the employer. All employers enrolled in the Medova MEWA also executed a "Plan Trust Document," establishing a trust account for the receipt of contributions.

49.      Beginning in 2019, the ASAs were modified to denominate "Employer Accounts" as the recipient for contributions instead of "Trust accounts." The ASAs provided that the funds held for claims funding would be segregated, and that Defendant Medova would be a signatory on the employer account. Beginning in 2019, the Remittance Agreements were revised to refer to

"accounts" established for each employer instead of "trust" accounts. Beginning in 2019, the Trust Documents were revised and renamed "Health Care Account – Single Employer Health Care Account", and all references to a "trust" were removed; instead the agreement provided for "the creation of a bookkeeping Account to pay for benefits payable to the Members, along with other related costs of the Plan in accordance with the Administrative Services Agreement."

50.     Notwithstanding the language of the contracts signed by employers, at all relevant times, the Medova Defendants directed the remittance of contributions from sponsoring employers with more than twenty-five employees to Claim Fund Accounts:  separate bank accounts at Simmons Bank in the name of Medova with the employer's name referenced, sometimes with "FBO" before the employer's name.

51.     Notwithstanding the language of the contracts signed by employers, until sometime in 2019, the Medova Defendants directed contributions from sponsoring employers with twenty-five or fewer employees to be deposited and commingled into the NexCentra Pooled Account. Medova did not maintain complete and accurate records tracking the source of assets within this account. The Medova Defendants transferred commingled funds from the NexCentra Pooled Account (derived from contributions from some Participating Plans) to fund claims of other Participating Plans.

52.     Beginning sometime between May 2019 and July 2019, the Medova Defendants began the process of dissolving the NexCentra Pooled Account and establishing Claim Fund Accounts at Simmons Bank for employer groups with twenty-five or fewer employees. These Claim Fund Accounts were established in the name of Medova with the employer's name referenced, sometimes with "FBO" before the employer's name, resulting in an additional 915 Claim Fund Accounts held at Simmons Bank.

53.     Instead of transferring the assets of the NexCentra Pooled Account to the new individual Claims Funding Accounts, funds in the NexCentra Pooled Account were used to pay the runout claims of all small employers incurred between July 28, 2019, and February 18, 2020. Therefore, the NexCentra Pooled Account paid the claims of some Participating Plans with the assets of other Participating Plans.

54.     Between April 1, 2016, and December 31, 2019, the Medova Defendants transferred millions of dollars from Claim Fund Accounts to the Medova General Fund, a Medova corporate account.

55.     Between April 1, 2016, and October 2017, the Medova Defendants transferred millions of dollars from Claim Fund Accounts to the Petrich General Claims Fund ("Petrich Fund"), another Medova corporate account.

56.     The Medova Defendants transferred funds from the Medova General Fund and the Petrich Fund to Claim Fund Accounts and the NexCentra Pooled Account when those accounts had insufficient balances to fund benefits and in instances when Claim Fund Accounts should have received aggregate stop-loss insurance benefits.

57.     By the actions and failures to act as described above, the Medova Defendants:

a.      failed to hold all assets of an employee benefit plan in trust by one or more trustees named in the trust instrument or plan instrument or appointed by a person who is a named fiduciary, in violation of ERISA section 403(a), 29 U.S.C. § 1103(a);

b.      failed to ensure that the assets of the Participating Plans were held for the exclusive purposes of providing benefits to participants in those plans and their beneficiaries and defraying reasonable expenses of administering the

Participating Plans, in violation of ERISA section 403(c)(1), 29 U.S.C.

§ 1103(c)(1);

c.       failed to act solely in the interest of the participants and

beneficiaries of the Participating Plans and for the exclusive purpose of providing

benefits to participants and their beneficiaries and defraying reasonable expenses

of plan administration, in violation of ERISA section 404(a)(1)(A), 29 U.S.C.

§ 1104(a)(1)(A);

d.       failed to act with the care, skill, prudence, and diligence under the

circumstances then prevailing that a prudent man acting in a like capacity and

familiar with such matters would use in the conduct of an enterprise of a like

character and with like aims, in violation of ERISA section 404(a)(1)(B), 29

U.S.C. § 1104(a)(1)(B);

e.       dealt with assets of the Participating Plans in their own interest in

violation of ERISA section 406(b)(1), 29 U.S.C. § 1106(b)(1); and

f.       acted on behalf of a party whose interests were adverse to the

interests of the Participating Plans or the interests of their participants and

beneficiaries, in violation of ERISA section 406(b)(2), 29 U.S.C. § 1106(b)(2).

58.     As a result of the foregoing breaches of duty, the Medova Defendants caused

losses to the ERISA-covered employee benefit plans participating in the Medova MEWA, for

which the Participating Plans are entitled to equitable relief. ERISA § 409, 29 U.S.C. § 1109.

59.     Pursuant to ERISA section 405(a)(1) through (3), 29 U.S.C. § 1105(a)(1-3), each

of the Medova Defendants are liable for the breaches of their co-fiduciaries as described above,

because they knowingly participated in or concealed an act or omission of their co-fiduciaries,

knowing that such act or omission was a breach; it enabled their co-fiduciaries to commit a breach by breaching their own fiduciary duties under ERISA section 404(a)(1), 29 U.S.C. § 1104(a)(1); and they had knowledge of a fiduciary breach by their co-fiduciaries and did not make reasonable efforts under the circumstances to remedy it.

COUNT TWO

**The Medova Defendants Are Failing to Pay Claims and Failing to Disclose Medova's Inadequate Plan Funding to Existing and New Participating Plans**

60.     Paragraphs 1 through 59, above, are incorporated by reference.

61.     As the financial solvency of the Medova MEWA has worsened, the Medova Defendants systemically delay paying claims. Only a small percentage of medical claims are paid within thirty days of receipt. The majority of claims are paid between forty-six and ninety days after receipt.

62.     As the financial solvency of the Medova MEWA has worsened, the Medova Defendants have denied payment of legitimate claims, particularly large dollar claims.

63.     The Medova Defendants hold the exclusive authority to decide claims and appeals and process claims. Therefore, they are aware of the delay in payment and denial of claims.

64.     Despite these unpaid claims, the Medova Defendants continue to enroll new employers in the Medova MEWA without advising them of the Medova MEWA's worsening financial solvency and increasing inability to pay claims.

65.     The Medova Defendants have not disclosed the fact of the inability to pay claims and lack of solvency to either the current or newly enrolled Participating Plans, while unwitting participants and beneficiaries continue to incur claims for medical services.

66.     By the actions and failures to act as described above, the Medova Defendants:

        a.     failed to act solely in the interest of the participants and

18

beneficiaries of the Participating Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA section 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

b.      failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B); and

c.      failed to discharge their duties in accordance with the documents and instruments governing the Participating Plans, in violation of ERISA section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).As a result of the foregoing breaches of duty, the Medova Defendants caused losses to the ERISA-covered employee benefit plans participating in the Medova MEWA, for which the Participating Plans are entitled to equitable relief. ERISA § 409, 29 U.S.C. § 1109.

67.      Pursuant to ERISA section 405(a)(1) through (3), 29 U.S.C. § 1105(a)(1-3), each of the Medova Defendants are liable for the breaches of their co-fiduciaries as described above, because they knowingly participated in or concealed an act or omission of their co-fiduciaries, knowing that such act or omission was a breach; it enabled their co-fiduciaries to commit a breach by breaching their own fiduciary duties under ERISA section 404(a)(1), 29 U.S.C. § 1104(a)(1); and they had knowledge of a fiduciary breach by their co-fiduciaries and did not make reasonable efforts under the circumstances to remedy it.

<u>COUNT THREE</u>

**Defendants Medova and Whitney Allocated Insufficient Premium Dollars for Claims Funding**

68.     Paragraphs 1 through 67, above, are incorporated by reference.

69.     Defendants Medova and Whitney, in their sole discretion, established the amount of the monthly premium Medova charged for each participating employee that would go to the Claim Fund/NexCentra Pooled Account and the amount of the premium that would go to MCIC for aggregate stop-loss insurance (collectively referred to as "claims funding"). Defendants Medova and Whitney established claims funding rates without review by an actuary. Defendant Whitney is not an actuary.

70.     Defendants Medova and Whitney established that approximately 48% of claims funding be allocated to Claim Fund Accounts or to the NexCentra Pooled Account and approximately 42% of claims funding be allocated to the MCIC Accommodation Fund. The allocation of 42% to the MCIC Accommodation Fund for aggregate insurance with an accommodation feature is excessive, and the allocation of 48% to Claim Fund Accounts to fund claims was insufficient to adequately cover claims.

71.     As of December 31, 2019, there is a funding shortfall in the Medova MEWA exceeding $18 million.

72.     By the actions and failures to act as described above, the Medova Defendants:

a.     failed to act solely in the interest of the participants and beneficiaries of the Participating Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA section 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A); and

> b.      failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

73.      As a result of the foregoing breaches of duty, the Defendants Medova and Whitney caused losses to the ERISA-covered employee benefit plans participating in the Medova MEWA, for which the Participating Plans are entitled to equitable relief. ERISA § 409, 29 U.S.C. § 1109.

74.      Pursuant to ERISA section 405(a)(1) through (3), 29 U.S.C. § 1105(a)(1-3), Defendants Medova and Whitney are liable for the breaches of their co-fiduciaries as described above, because they knowingly participated in or concealed an act or omission of their co-fiduciaries, knowing that such act or omission was a breach; it enabled their co-fiduciaries to commit a breach by breaching their own fiduciary duties under ERISA section 404(a)(1), 29 U.S.C. § 1104(a)(1); and they had knowledge of a fiduciary breach by their co-fiduciaries and did not make reasonable efforts under the circumstances to remedy it.

<u>COUNT FOUR</u>

**The Medova Defendants Are Improperly Transferring Plan Assets to Advent**

75.      Paragraphs 1 through 74, above, are incorporated by reference.

76.      Between January 2017 and December 2019, the Medova Defendants paid $7,034,323.29 from Participating Plans to Advent. The funds were sent to a bank account at INTRUST Bank, N.A. in Wichita, Kansas, over which only Defendants Whitney and Willson have signatory authority.

77.    Between April 2017 and February 2018, Defendants Whitney and Willson each received $1,239,878.58 directly from Advent.

78.    Between April 2017 and February 2018, Advent paid $277,500 to Defendant Medova as "management fees."

79.    Between April 2018 and December 2019, Advent sent $2,432,287.98 to Benison Capital, which is solely owned by Defendant Whitney.

80.    Between April 2018 and December 2019, Advent sent $2,432,287.98 to Patrick Enterprises, which is solely owned by Defendant Willson.

81.    By the actions and failures to act as described above, the Medova Defendants:

a.    failed to act solely in the interest of the participants and beneficiaries of the Participating Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA section 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

b.    failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B);

c.    used Participating Plans assets in transactions that they knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the Medova MEWA, in violation of ERISA section 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D);

d.      dealt with assets of the Participating Plans in their own interest in violation of ERISA section 406(b)(1), 29 U.S.C. § 1106(b)(1);

e.      acted on behalf of a party whose interests were adverse to the interests of the Participating Plans or the interests of their participants and beneficiaries, in violation of ERISA section 406(b)(2), 29 U.S.C. § 1106(b)(2); and

f.      received consideration for their own personal account from a party dealing with the plan in violation of ERISA section 406(b)(3), 29 U.S.C. § 1106(b)(3).

82.     As a result of the foregoing breaches of duty, the Medova Defendants caused losses to the ERISA-covered employee benefit plans participating in the Medova MEWA, for which the Participating Plans are entitled to equitable relief. ERISA § 409, 29 U.S.C. § 1109.

83.     Pursuant to ERISA section 405(a)(1) through (3), 29 U.S.C. § 1105(a)(1-3), each of the Medova Defendants are liable for the breaches of their co-fiduciaries as described above, because they knowingly participated in or concealed an act or omission of their co-fiduciaries, knowing that such act or omission was a breach; it enabled their co-fiduciaries to commit a breach by breaching their own fiduciary duties under ERISA section 404(a)(1), 29 U.S.C. § 1104(a)(1); and they had knowledge of a fiduciary breach by their co-fiduciaries and did not make reasonable efforts under the circumstances to remedy it.

84.     As a result of the conduct described above, Defendants Advent, Benison Capital, and Patrick Enterprises knowingly participated in the breaches of fiduciary duty described herein and each is subject to such appropriate equitable relief to redress the violations in which they knowingly participated and by which they were unjustly enriched and as necessary to undo the

prohibited transactions described herein pursuant to ERISA section 502(a)(5), 29 U.S.C.
§ 1132(a)(5).

COUNT FIVE

**The Medova Defendants Are Improperly Transferring Plan Assets to JDS**

85.     Paragraphs 1 through 84, above, are incorporated by reference.

86.     Between January 2017 and December 2019, the Medova Defendants paid
$1,460,587.50 from Participating Plans to JDS. The funds were sent to a bank account at
INTRUST Bank, N.A. in Wichita, Kansas, over which Defendant Whitney had signatory
authority.

87.     Between December 2016 and July 2019, Defendant Whitney received $411,000
from JDS as "member draws".

88.     Between December 2016 and July 2019, Defendant Medova received $259,601
from JDS in "management fees."

89.     By the actions and failures to act as described above, the Medova Defendants:

a.     failed to act solely in the interest of the participants and
beneficiaries of the Participating Plans and for the exclusive purpose of providing
benefits to participants and their beneficiaries and defraying reasonable expenses
of plan administration, in violation of ERISA section 404(a)(1)(A), 29 U.S.C.
§ 1104(a)(1)(A);

b.     failed to act with the care, skill, prudence, and diligence under the
circumstances then prevailing that a prudent man acting in a like capacity and
familiar with such matters would use in the conduct of an enterprise of a like

character and with like aims, in violation of ERISA section 404(a)(1)(B), 29

U.S.C. § 1104(a)(1)(B);

      c.      dealt with assets of the Participating Plans in their own interest in

violation of ERISA section 406(b)(1), 29 U.S.C. § 1106(b)(1);

      d.      acted on behalf of a party whose interests were adverse to the

interests of the Participating Plans or the interests of their participants and

beneficiaries, in violation of ERISA section 406(b)(2), 29 U.S.C. § 1106(b)(2);

and

      e.      received consideration for their own personal account from a party

dealing with the plan in violation of ERISA section 406(b)(3), 29 U.S.C.

§ 1106(b)(3).

90.      As a result of the foregoing breaches of duty, the Medova Defendants caused

losses to the ERISA-covered employee benefit plans participating in the Medova MEWA, for

which the Participating Plans are entitled to equitable relief. ERISA § 409, 29 U.S.C. § 1109.

91.      Pursuant to ERISA section 405(a)(1) through (3), 29 U.S.C. § 1105(a)(1-3), each

of the Medova Defendants are liable for the breaches of their co-fiduciaries as described above,

because they knowingly participated in or concealed an act or omission of their co-fiduciaries,

knowing that such act or omission was a breach; it enabled their co-fiduciaries to commit a

breach by breaching their own fiduciary duties under ERISA section 404(a)(1), 29 U.S.C.

§ 1104(a)(1); and they had knowledge of a fiduciary breach by their co-fiduciaries and did not

make reasonable efforts under the circumstances to remedy it.

92.      As a result of the conduct described above, Defendant JDS knowingly

participated in the breaches of fiduciary duty described herein and is subject to such appropriate

equitable relief to redress the violations in which it knowingly participated and by which it was unjustly enriched and as necessary to undo the prohibited transactions described herein pursuant to ERISA section 502(a)(5), 29 U.S.C. § 1132(a)(5).

COUNT SIX

**The Medova Defendants Are Improperly Transferring Plan Assets to MCIC**

93.     Paragraphs 1 through 92, above, are incorporated by reference.

94.     During 2016 through mid-2019, most Participating Plans paid premiums to MCIC for aggregate stop-loss coverage, including premium amounts paid to the MCIC Accommodation Fund. MCIC's annual net premium for aggregate stop loss coverage, as reported on its financial statements for the years 2015 through March 31, 2020, totaled $47,533,626.40. MCIC's financial statements did not report the premium amounts paid to the MCIC Accommodation Fund.

95.     In addition to aggregate stop loss premiums, beginning in 2017, the Medova Defendants made ad hoc transfers of over $37 million from Claim Fund Accounts to the MCIC Accommodation Fund.

96.     Beginning mid-2019, MCIC, through Defendant Whitney, entered into "Quota Share Agreements" with other carriers. The carriers contracted directly with some Participating Plans for the issuance of aggregate stop-loss coverage. Pursuant to the Quota Share Agreements, the carrier ceded the premiums received from these Participating Plans directly or indirectly to Medova and/or MCIC after deducting commissions and fees in the range of 7.5% to 9.5%, depending on the carrier.

97.     On August 17, 2017, Defendants Whitney and Willson, in their capacity as the sole directors of MCIC, declared a dividend to Medova in the amount of $140,000 and to Willson in the amount of $20,000.

98.     By the actions and failures to act as described above, the Medova Defendants:

a.      failed to ensure that the assets of the Participating Plans were held for the exclusive purposes of providing benefits to participants in those plans and their beneficiaries and defraying reasonable expenses of administering the Participating Plans, in violation of ERISA section 403(c)(1), 29 U.S.C. § 1103(c)(1);

b.      failed to act solely in the interest of the participants and beneficiaries of the Participating Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA section 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

c.      failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B);

d.      used Participating Plans' assets in transactions which they knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of MCIC, a party in interest, of assets of the Medova MEWA, in violation of ERISA section 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D);

e.      dealt with assets of the Participating Plans in their own interest in violation of ERISA section 406(b)(1), 29 U.S.C. § 1106(b)(1);

f.      acted on behalf of a party whose interests were adverse to the interests of the Participating Plans or the interests of their participants and

beneficiaries, in violation of ERISA section 406(b)(2), 29 U.S.C. § 1106(b)(2); and

       g.     received consideration for their own personal account from a party dealing with the plan in violation of ERISA section 406(b)(3), 29 U.S.C. § 1106(b)(3).

99.     As a result of the foregoing breaches of duty, the Medova Defendants caused losses to the ERISA-covered employee benefit plans participating in the Medova MEWA, for which the Participating Plans are entitled to equitable relief. ERISA § 409, 29 U.S.C. § 1109.

100.     Pursuant to ERISA section 405(a)(1) through (3), 29 U.S.C. § 1105(a)(1-3), each of the Medova Defendants are liable for the breaches of their co-fiduciaries as described above, because they knowingly participated in or concealed an act or omission of their co-fiduciaries, knowing that such act or omission was a breach; it enabled their co-fiduciaries to commit a breach by breaching their own fiduciary duties under ERISA section 404(a)(1), 29 U.S.C. § 1104(a)(1); and they had knowledge of a fiduciary breach by their co-fiduciaries and did not make reasonable efforts under the circumstances to remedy it.

<u>COUNT SEVEN</u>

**The MCIC Defendants Are Improperly Using Plan Assets in the Medova Accommodation Fund to Pay the Claims of Other Participating Plans**

101.     Paragraphs 1 through 100, above, are incorporated by reference.

102.     Defendants MCIC, Whitney, and Willson (collectively, the "MCIC Defendants") have sole control over the MCIC Accommodation Fund.

103.     The MCIC Defendants directed the transfer of plan assets from the MCIC Accommodation Fund to Claim Fund Accounts with insufficient balances to cover claims. Although the intended purpose of the MCIC Accommodation Fund was to provide advance

aggregate stop-loss funding during the year according to pro rata attachment points, the MCIC Defendants transferred assets from the MCIC Accommodation Fund to Claim Fund Accounts without regard to whether a Participating Plan had met applicable attachment points.

104.    By the actions and failures to act as described above, Defendants MCIC, Whitney, and Willson:

a.    failed to act solely in the interest of the participants and beneficiaries of the Participating Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA section 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

b.    failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B);

c.    dealt with assets of the Participating Plans in their own interest, in violation of ERISA section 406(b)(1), 29 U.S.C. § 1106(b)(1); and

d.    acted on behalf of a party whose interests were adverse to the interests of the Participating Plans or the interests of their participants and beneficiaries, in violation of ERISA section 406(b)(2), 29 U.S.C. § 1106(b)(2).

105.    As a result of the foregoing breaches of duty, the MCIC Defendants caused losses to the ERISA-covered employee benefit plans participating in the Medova MEWA, for which the Participating Plans are entitled to equitable relief. ERISA § 409, 29 U.S.C. § 1109.

106.     Pursuant to ERISA section 405(a)(1) through (3), 29 U.S.C. § 1105(a)(1-3), each of the MCIC Defendants are liable for the breaches of their co-fiduciaries as described above, because they knowingly participated in or concealed an act or omission of their co-fiduciaries, knowing that such act or omission was a breach; it enabled their co-fiduciaries to commit a breach by breaching their own fiduciary duties under ERISA section 404(a)(1), 29 U.S.C. § 1104(a)(1); and they had knowledge of a fiduciary breach by their co-fiduciaries and did not make reasonable efforts under the circumstances to remedy it.

COUNT EIGHT

**The Medova Defendants Are Failing to Comply with ERISA Reporting Requirements**

107.     Paragraphs 1 through 106, above, are incorporated by reference.

108.     The Medova Defendants have not filed a Form M-1 annually with respect to the Medova MEWA as required under ERISA section 101(g).

**PRAYER FOR RELIEF**

WHEREFORE, the Secretary asks that this Court enter an Order:

109.     Preliminary and permanently removing Defendants **MEDOVA HEALTHCARE FINANCIAL GROUP, LLC; DANIEL WHITNEY; MICHELLE WILLSON; and MIDLANDS CASUALTY INSURANCE COMPANY, INC.**, as fiduciaries, service providers, trustees, and administrators of the Participating Plans or the Medova MEWA and preliminarily and permanently enjoining anyone acting on their behalf, including their officers, agents, employees, assigns, subsidiaries, affiliates, service providers, accountants, attorneys, and any other party acting in concert with them or at their direction, as fiduciaries of the Participating Plans or the Medova MEWA;

110.    Preliminarily and permanently enjoining Defendants **MEDOVA HEALTHCARE FINANCIAL GROUP, LLC; DANIEL WHITNEY; MICHELLE WILLSON; and MIDLANDS CASUALTY INSURANCE COMPANY, INC.**, from acting as a fiduciary, service provider, trustee, or administrator to the Participating Plans or the Medova MEWA and preliminarily and permanently enjoining anyone acting on their behalf, including their officers, agents, employees, assigns, subsidiaries, affiliates, service providers, accountants, attorneys, and any other party acting in concert with them or at their direction from acting as a fiduciary to the Participating Plans or the Medova MEWA;

111.    Requiring Defendants **MEDOVA HEALTHCARE FINANCIAL GROUP, LLC; DANIEL WHITNEY; and MICHELLE WILLSON** to provide immediate notice to all participants in a form approved by the Secretary that informs participants that the MEWA is underfunded and that there is a significant risk that medical expenses will not be reimbursed even if an expense is covered by the Participating Plan;

112.    Appointing Receivership Management, Inc. ("Independent Fiduciary") as the independent fiduciary to the Participating Plans, with full and exclusive fiduciary authority over their administration and management, and full and exclusive control over the Medova MEWA and Participating Plans' assets, including, but not limited to:

a.    Authority to exercise all fiduciary responsibilities relating to the Medova MEWA and Participating Plans;

b.    Authority to take exclusive control of all plan assets of the Medova MEWA and the Participating Plans;

c.    Authority given to trustees under the terms of the documents governing the Medova MEWA and Participating Plans;

d.      Authority to amend the documents governing the Medova MEWA;

e.      Exclusive authority to appoint, replace and remove such administrators, trustees, attorneys, employees, assigns, agents, and service providers as the Independent Fiduciary shall, in the Independent Fiduciary's sole discretion, determine as necessary to aid the Independent Fiduciary in the exercise of the Independent Fiduciary's powers, duties, and responsibilities to the Medova MEWA and Participating Plans;

f.      Authority to conduct an accounting of all medical claims and negotiate all medical claims;

g.      Authority to terminate the Medova MEWA and Participating Plans, if in the best interest of the Medova MEWA and Participating Plans and, in that event, to establish a claims submission deadline, and to adjudicate all claims filed by such deadline, and to deny claims not filed by the claims submission deadline;

h.      Authority to adjudicate and pay or deny any and all claims submitted to the Medova MEWA and Participating Plans and to re-adjudicate all claims denied by the Participating Plans in connection with the foregoing violations of ERISA and its regulations;

i.      Authority to pursue recovery of monies owed and due to the Medova MEWA and Participating Plans from any person obligated to make such payments under the terms and conditions of the Medova MEWA and Participating Plans;

j.      Authority to identify and pursue recovery of Medova MEWA and Participating Plans' assets as well as any monies to which the Medova MEWA or Participating Plans have a right of recovery;

k.      Authority to identify and pursue claims on behalf of the Medova MEWA and Participating Plans;

l.      Except as provided herein, the authority to delegate to such administrators, trustees, attorneys, employees, assigns, agents, and service providers such fiduciary responsibilities as the Independent Fiduciary shall determine appropriate. The Independent Fiduciary may not, however, delegate the authority to appoint, replace, and remove such administrators, trustees, attorneys, employees, assigns, agents, and service providers, or the responsibility to monitor the activities of the Medova MEWA and Participating Plans' trustees, attorneys, agents, and service providers;

m.      Authority to make all required filings, including Form M-1; and

n.      Authority to pay itself reasonable and necessary fees from the Medova MEWA and Participating Plans' assets and pay the reasonable and necessary fees of service providers;

113.   Requiring Defendants **MEDOVA HEALTHCARE FINANCIAL GROUP, LLC; DANIEL WHITNEY; MICHELLE WILLSON; and MIDLANDS CASUALTY INSURANCE COMPANY, INC.**, to provide to the Independent Fiduciary all documents, records, accounts or other information required to administer and manage the Participating Plans;

114.   Requiring Defendants **MEDOVA HEALTHCARE FINANCIAL GROUP, LLC**, to file all delinquent Forms M-1;

115.    Requiring Defendants **MEDOVA HEALTHCARE FINANCIAL GROUP, LLC; DANIEL WHITNEY; MICHELLE WILLSON; and MIDLANDS CASUALTY INSURANCE COMPANY, INC.**, to jointly and severally restore all losses, including interest, they caused to the Participating Plans;

116.    Requiring Defendants **MEDOVA HEALTHCARE FINANCIAL GROUP, LLC; DANIEL WHITNEY; and MICHELLE WILLSON** to jointly and severally make equitable restitution to the Participating Plan's participants of all losses resulting from their fiduciary breaches, including interest on re-adjudicated claims;

117.    Requiring Defendants **MEDOVA HEALTHCARE FINANCIAL GROUP, LLC; DANIEL WHITNEY; MICHELLE WILLSON; and MIDLANDS CASUALTY INSURANCE COMAPNY, INC.**, to jointly and severally reimburse the fees and expenses of the Independent Fiduciary to the Medova MEWA and the Participating Plans;

118.    Requiring Defendants **MEDOVA HEALTHCARE FINANCIAL GROUP, LLC; DANIEL WHITNEY; MICHELLE WILLSON; MIDLANDS CASUALTY INSURANCE COMPANY, INC.; JUST DIABETIC SUPPLIES, LLC; ADVENT HEALTH SERVICES, LLC D/B/A DIRECTHEALTH; BENISON CAPITAL ADVISORS, INC.; and PATRICK ENTERPRISES, INC.**, to disgorge to the Medova MEWA all profits and fees and other monies earned in connection with their violations;

119.    Pursuant to the All Writs Act staying, enjoining and/or prohibiting any person or entity from claiming as against the assets of the Participating Plans outside of the procedures and processes to be set forth by the Independent Fiduciary and for such protections to be maintained until closure until further order by this Court;

120.    Permanently enjoining Defendants **MEDOVA HEALTHCARE FINANCIAL GROUP, LLC; DANIEL WHITNEY; MICHELLE WILLSON; and MIDLANDS CASUALTY INSURANCE COMPANY, INC.**, or anyone acting on their behalf, including their principals, officers, directors, owners, agents, assigns, or subsidiaries, from ever acting as a fiduciary or service provider to any plan covered by Title I of ERISA and from marketing or enrolling any employers, professional employer organizations, or participants in any ERISA or non-ERISA covered health plan or any plan purporting to provide any type of medical benefits;

121.    Awarding the Secretary his costs incurred in this civil action; and

122.    Granting such other relief as may be equitable, just, and proper.

For the Secretary:

Kate S. O'Scannlain
Solicitor of Labor

Christine Z. Heri
Regional Solicitor

Evert H. Van Wijk
Associate Regional Solicitor

s/ Traci Martin
Traci Martin

Attorney
Kansas Bar No. 24284

Attorneys for Plaintiff, U.S. Secretary of Labor
Office of the Solicitor
2300 Main Street, Suite 1020
Kansas City, MO 64108
Telephone: (816) 285-7260
Fax:  (816) 285-7287
E-mail: martin.traci.e@dol.gov