# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JULIE A. SU,                      )
ACTING SECRETARY OF LABOR,    )
U.S. DEPARTMENT OF LABOR,     )
                             )
    Plaintiff,               )
                             )      CIVIL ACTION
    v.                      )
                             )      Case No. 2:20-cv-02624-TC-ADM
DANIEL L. WHITNEY;          )
MICHELLE WILLSON;           )
MEDOVA HEALTHCARE FINANCIAL   )
GROUP, LLC; MIDLANDS CASUALTY   )
INSURANCE COMPANY, INC.;      )
JUST DIABETIC SUPPLIES, LLC;    )
ADVENT HEALTH SERVICES, LLC    )
d/b/a DIRECTHEALTH; BENISON     )
CAPITAL ADVISORS, INC.; PATRICK  )
ENTERPRISES, INC.; LIFESTYLE HEALTH )
PLANS GROUP BENEFIT PROGRAM;  )
LIFESTYLE HEALTH PLANS – LEVEL  )
FUNDED GROUP BENEFITS; LEVEL   )
FUNDED LIFESTYLE SELF-INSURED   )
HEALTH PLAN; and LIFESTYLE HEALTH )
PLANS,                    )
                             )
    Defendants.           )

## <u>RESPONSE TO ORDER TO SHOW CAUSE</u>

In response to the Order entered by Judge Toby Crouse on May 3, 2024 (ECF Doc. No 183), Plaintiff Julie A. Su, Acting Secretary of Labor, United States Department of Labor, submits the following response as to why there is cause to keep in place the Order entered by Judge Crouse on June 3, 2021, under the authority of the All-Writs Act, 28 U.S.C. § 1651 (ECF Doc. No 58); as well as why the appointment of an independent fiduciary, part of the Consent Order entered by Judge Crouse on March 18, 2021 (ECF Doc. No. 32), should not be terminated.

In passing ERISA, Congress declared a national public interest in protecting "the continued well-being and security of millions of employees and their dependents". 29 U.S.C. §1001(a); <u>Solis v. Hutcheson</u>, No. 1:12-cv-236-EJL, 2012 WL 2151525, at *5 (D. Idaho June 13, 2012). In furtherance of this goal, "Congress intended to make available the full range of legal and equitable remedies in cases of ERISA violations." <u>Hutcheson</u>, 2012 WL 2151525, at *5 (citing H.R. Rep. No. 93-127H, reprinted in 3 U.S.C.C.A.N. 4639, 4838, 4871 (1974)); <u>see also</u> <u>Harrison v. Envision Mgmt. Holding, Inc. Bd. of Dirs.</u>, 59 F.4th 1090, 1102 (10th Cir. 2023) (affirming district court's denial of arbitration because agreement did not allow for expansive equitable remedies allowed under ERISA, including appointment of independent fiduciary).

By granting the parties' Joint Motion for Entry of Consent Order (ECF Doc. No. 26), which provided for the appointment of an independent fiduciary, and by granting Plaintiff's Motion Under the All Writs Act to Enjoin Ongoing and Future Litigation (ECF Doc. No. 45), which enjoined third-party legal action against plan beneficiaries (amongst other individuals and entities), this Court properly used its authority to protect the tens of thousands of participants in employer-sponsored healthcare plans administered by the Medova HealthCare Group, LLC ("Medova"). Although it has been approximately three years since the appointment of independent fiduciary Receivership Management, Inc. ("Independent Fiduciary") and entry of an order under the All-Writs Act, the overarching motive for those actions remains the same: to protect the individuals who diligently paid their monthly premiums under the assumption that they would be covered by their employer-sponsored health plan, from further mismanagement by Medova and from third-party litigation/creditors. Therefore, the Acting Secretary asks this Court to continue the appointment of the Independent Fiduciary and to keep the All-Writs Order in place, if not fully than at least in a way that protects plan participants.

**A.     The Independent Fiduciary is Still Necessary to the Medova Plans.**

This Court appointed the Independent Fiduciary via Consent Order to manage the employer-sponsored healthcare plans administered by Medova (the "Plans"), which Plaintiff alleges Medova significantly mismanaged, causing severe funding deficiencies.[1]  And, since its appointment, the Independent Fiduciary has done just that:  after starting with approximately 2500 Plans (ECF Doc. No. 42 at p. 3) – a number that increased to around 3000 as the Independent Fiduciary learned of Plans previously undisclosed by Medova (ECF Doc. No. 48 at p. 4) – the Independent Fiduciary has successfully liquidated over 1500 Plans.  This includes paying over fifty million dollars in medical claims and submitting over 1500 stop loss claims. EFC Doc. No. 185 at pp. 2-3.

The Acting Secretary understands the Court's frustration with the time that has passed since its appointment of the Independent Fiduciary.[2]  However, this is most indicative of the complexity of Medova's operations that the Independent Fiduciary has had to untangle.  Because Medova has refused to admit it operated a multiple-employer welfare arrangement ("MEWA"), the Independent Fiduciary had to treat each Plan as a discrete entity and separately audit each Plan's funding.  Furthermore, Medova's practice of moving money between Plans and using its

---

[1]The Acting Secretary respectfully disagrees with the Court's statement that "the ultimate purpose of the independent fiduciary is to oversee the parties' dispute".  ECF Doc. No. 183, at p. 2.  The parties' disputes – whether Medova operated a multiple-employer welfare arrangement ("MEWA"), whether Medova failed to pay claims, whether Medova failed to allocate sufficient funds to pay for claims, etc. – exist separate from the work of the Independent Fiduciary, which is to operate (and ultimately wind-down) the Plans in a way that is most beneficial to the participants.

[2]To clarify the effect the pending Department of Justice investigation into Medova's operations has had on the work of the Independent Fiduciary, as addressed on page 2 of the Court's show cause order (ECF Doc. No. 183), the Acting Secretary does not believe it has significantly impacted the time required.  While the parties mentioned the investigation during the April 29, 2024, hearing before the Court, this was as background information and to explain why the parties requested the civil stay entered by Magistrate Judge Mitchell.  At most, the DOJ's investigation has delayed the Independent Fiduciary having access to additional money (which Plaintiff alleges are plan assets) that the DOJ has frozen, but it would have still been necessary to untangle the Plans before any recovered funds could be distributed.

various accommodation funds to co-mingle such monies created a significant amount of work for the Independent Fiduciary.  And that work is not over.

    As outlined in the Independent Fiduciary's latest report, although the Administrative Services Agreement between it and its current third-party administrator will not be renewed as of July 31, 2024, this does not mean the Independent Fiduciary's task of administering and liquidating the remaining Plans will be completed on that date.  Id. at pp. 4-5.  First, the Independent Fiduciary will be distributing Final Reports to more than one thousand Plan sponsors, which will inform the sponsors they each have sixty days to attempt to satisfy outstanding medical claims, either by paying for the claims themselves or negotiating with providers.  After this sixty-day period, the Independent Fiduciary will notify participants of unresolved claims and their right to sue the sponsor under ERISA.  Id. at p. 5.  In addition, there is still a lawsuit pending in this Court that the Independent Fiduciary brought against a Plan sponsor, Magnolia Health Systems, Inc., for unpaid claims (5:23-cv-04089-TC-ADM).  Terminating the Independent Fiduciary will cause it to lose standing, and participants will lose a meaningful vehicle to have their unpaid claims addressed.  Id. at p. 6.  In short, there are numerous issues concerning the remaining Plans, highlighted on page 9 of the Independent Fiduciary's latest report, and the Independent Fiduciary is essential to the work that remains.

    Additionally, the Acting Secretary is still hopeful that the parties will be able to reach a resolution with Medova that will involve Defendants restoring monetary losses to the Plans.  If and when this happens, the Independent Fiduciary will be necessary to properly disperse these funds to the Plans.  While the Independent Fiduciary could in theory be reappointed at that time, it would create administrative issues as to which entity controls the data and the funds in the interim.

4

The Consent Order is to stay in place until "terminated at the request of either the Independent Fiduciary or the parties jointly, upon a finding by the Court that the Independent Fiduciary's appointment is no longer necessary." ECF Doc. No. 32 at ¶ 14. Because the work of the Independent Fiduciary is on-going, its appointment is still necessary to protect Plan participants, and therefore the Independent Fiduciary should be allowed to continue until the underlying litigation is resolved. Given the Court's concerns about timing, the Acting Secretary suggests the parties revisit the issue later this year, on or around December 20, 2024, to reevaluate the progress made by the Independent Fiduciary on completing its tasks outlined above.

**B.   The Court's Order Under the All-Writs Act is Necessary to Protect Participants.**

Similar to the appointment of the Independent Fiduciary, the parties requested the Court enter a stay on litigation under the All-Writs Act in large part "to protect, to the extent possible, the participants and beneficiaries from litigation and collection activities relating to unpaid claims." ECF Doc. No. 58 at p. 2. These same concerns remain despite the lapse of time, and therefore the Acting Secretary asks the protections under the All-Writs Act Order remain in place, at least with regard to the Plan participants.

As the Supreme Court noted, "courts [must] always bear in mind the ultimate consideration whether allowance or disallowance of particular relief would best effectuate the underlying purposes of ERISA – enforcement of strict fiduciary standards of care in the administration of all aspects of pension plans and promotion of the best interests of participants and beneficiaries." Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134 (1985) (quoted by Outzen v. Fed. Deposit Ins. Corp., 948 F.2d 1184, 1188 (10th Cir. 1991)); see also Cutler v. 65 Sec. Plan, 831 F. Supp. 1008, 1013 (E.D.N.Y. 1993) ("Where the public interest and large numbers of

people are involved, courts may go even farther to fashion broad remedies.") (entering stay in ERISA matter under the All-Writs Act and citing <u>Outzen</u>).

If the All-Writs Act stay is lifted at this point, participants are likely to face, at best, collection efforts from providers or, at worst, harassment from third-party collection agencies, despite the participants' payment of monthly premiums for agreed-upon health benefits.  As the Independent Fiduciary noted, it has sent over five thousand letters to providers and collectors in an attempt to gain compliance with the Court's All-Writs Act Order.  ECF Doc. No. 185 at p. 15. Without the Order in place, there will be nothing to stop these matters from being litigated as soon as the stay is lifted, even before employers can attempt to negotiate claims with providers following their receipt of the Independent Fiduciary's Final Report concerning their Plans. Many of these potential lawsuits could find their way to this Court based on diversity jurisdiction (as Medova operated in thirty-eight states).  Continuing the stay, even until the end of the year and then revisiting the issue (as the Acting Secretary suggests for the Independent Fiduciary's appointment as well) will not only protect participants, but the Court's resources as well.

In conclusion, the Acting Secretary asks the Court to allow the Independent Fiduciary to continue its hard work regarding the Medova Plans, as well as keeping the protection provided by the All-Writs Act stay in-place, if not until the end of the litigation, as least until December 20, 2024, at which time the Court and the parties can revisit these issues.

Respectfully submitted,

For the Secretary:

Seema Nanda
Solicitor of Labor

Christine Z. Heri
Regional Solicitor

Evert H. Van Wijk
Associate Regional Solicitor

*/s/ Traci Martin*
Traci Martin
Senior Trial Attorney
Kansas Bar No. 24284

*Attorneys for Plaintiff,*
*Acting U.S. Secretary of Labor*

Office of the Solicitor
2300 Main Street, Suite 10100
Kansas City, MO 64108
Telephone: (816) 285-7272
Fax:  (816) 285-7287
E-mail: martin.traci.e@dol.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of May, 2024, the foregoing was filed with the

Court's CM/ECF system, which automatically notified all counsel of record.

*/s/ Traci Martin*
Traci Martin